IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 14-20071-07-JAR |
| ) | |
| JUAN MANUEL LOPEZ-GARCIA, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM AND ORDER
DENYING DEFENDANT'S MOTION TO SUPPRESS**

This matter is before the Court on Defendant Juan Manuel Lopez-Garcia's Motion to Suppress Evidence (Doc. 113). On June 16–17, 2015, the Court held an evidentiary hearing on the motion to suppress. Having reviewed the evidence and arguments presented by the parties, the Court is now prepared to rule. As described more fully below, the Court denies Defendant's motion to suppress.

**I.     Factual Background**

On September 3, 2014, Magistrate Judge O'Hara approved a search warrant for 435 Shawnee Road, Kansas City, Kansas, based on an Affidavit in Support completed by FBI Special Agent Daniel M. Hajek. Agent Hajek's affidavit recited facts learned during a lengthy investigation that gave him probable cause to believe controlled substances, including but not limited to methamphetamine, cocaine, and crack cocaine, and other items related to the sale, distribution, and manufacture of controlled substances, would be found at that address. In addition to evidence derived from other investigatory tools, Agent Hajek relied on pole camera surveillance from outside the residence. The pole camera recorded activity between August 18, 2014 and September 4, 2014. In the affidavit, Agent Hajek recounts activity on August 22, 27,

and 31, 2014, which is set forth in paragraphs 21–23 of the affidavit:

> 21. According to pole camera surveillance on 08/22/2014, a white Cadillac Escalade from which **Saucedo-Avalos** sold methamphetamine and a maroon Chevy Malibu from which **Octavio** and **Roberto Lara-Mojica** sold methamphetamine to CHS #1, were present at 435 Shawnee Road in Kansas City, Kansas along with approximately three other vehicles. In addition, pole camera surveillance showed several other vehicles arriving at and departing from the address, stopping for brief periods of time. Based on my training and experience. I know this activity to be consistent with drug trafficking.
>
> 22. According to pole camera surveillance, on 8/27/2014, at approximately 8:15 pm, a dark sedan pulled into 435 Shawnee Road in Kansas City, Kansas. At least three hispanic males exited. Following a few brief counter-surveillance looks around the residence, the occupants quickly exited the vehicle and removed several bags from the trunk, bringing them to the front door. Two of the occupants walked around the house toward the back, while at least one other approached the front door to speak with a hispanic male at the address. Based on my training and experience, I know this activity to be consistent with the covert delivery of drugs and drug proceeds.
>
> 23. According to pole camera surveillance, on 08/31/2014, at approximately 4:27 a.m., a white Cadillac Escalade used by **Saucedo-Avalos** arrived at 435 Shawnee Road, Kansas City, Kansas. The vehicle backed in the driveway near the front door at the residence and up to three additional Hispanic males exited the vehicle with **Saucedo-Avalos**. The rear hatch of the vehicle was opened and the hispanic males entered and exited the residence. At approximately 4:40 a.m., four hispanic males walked across Shawnee Road, carrying several items behind the residence. On the morning of 09/02/2014, the white Cadillac Escalade was still backed in the driveway at 435 Shawnee Road, Kansas City, Kansas. Based on my training and experience, it appears that Saucedo-Avalos is utilizing 435 Shawnee Road as a drug storage location.[1]

At the evidentiary hearing, Agent Hajek testified about the pole camera footage and his statements in the affidavit. To aid himself in his testimony, Agent Hajek referenced the pole

---

[1] Ex. A ¶¶ 21–23.

camera video footage on the witness stand as he testified. The Government submitted the pole camera footage in video form; Defendant presented screen shots from the pole camera footage.

## II. Discussion

In his motion to suppress, Defendant requests a *Franks v. Delaware*[2] hearing, alleging that Agent Hajek omitted material information and made representations about the pole camera footage in the search warrant affidavit that were intentionally false, or made with reckless disregard for their truth, and thus the evidence obtained at 435 Shawnee Road must be suppressed. *Franks* held that a search warrant based on an affidavit that includes knowing and intentionally false statements, or statements made with reckless disregard of the truth, may void the warrant.[3] Upon a showing of falsity by a preponderance of the evidence, the reviewing court is to set aside the false material, and hold a hearing to determine whether the remaining information supports probable cause to believe evidence of a crime would be found at the place to be searched.[4] The standards under *Franks* also apply to material omissions.[5]

In order to obtain an evidentiary hearing under *Franks*, a defendant's "attack must be more than conclusory and must be supported by more than a desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by proof."[6] Negligent inaccuracies are not sufficient to show falsity as

---

[2]438 U.S. 154 (1978).

[3]*Id.* at 155–56.

[4]*Id.*

[5]*United States v. Knittel*, 462 F. App'x 844, 847 (10th Cir. 2012) (citing *United States v. Kennedy*, 131 F.3d 1371, 1376 (10th Cir. 1997)).

[6]*Franks*, 438 U.S. at 172.

3

required by *Franks*.[7]

When determining the sufficiency of the warrant after omitting an allegedly false statement, the Court views "the affidavit in a commonsense, nontechnical manner, with deference to be given in marginal cases to the prior determination of probable cause by the issuing authority."[8] "The test is whether the facts presented in the affidavit would 'warrant a man of reasonable caution' to believe that evidence of a crime will be found at the place to be searched."[9] Thus, only a probability and not a prima facie showing is the standard for probable cause.[10] Moreover, an "inaccurate statement" will not invalidate the warrant where there are sufficient accurate statements elsewhere in the warrant that support probable cause.[11] In applying these standards, the Court is mindful that "affidavits are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area."[12]

The Court conducted a hearing on the motion to suppress prior to finding that Defendant demonstrated falsity by a preponderance of the evidence. As discussed below, having now considered the testimony of Agent Hajek and reviewed the pole camera footage, the Court finds

---

[7] *United States v. Ross*, 920 F.2d 1530, 1534 (10th Cir. 1990).

[8] *United States v. Barrera*, 843 F.2d 1576, 1580 (10th Cir. 1988).

[9] *United States v. Nolan*, 199 F.3d 1180, 1182 (10th Cir. 1999) (quoting *Texas v. Brown*, 460 U.S. 730, 742 (1983)).

[10] *Id.* (citing *Illinois v. Gates*, 462 U.S. 213, 235 (1983)).

[11] *Barrera*, 843 F.2d at 1580 (10th Cir. 1988) (discussing *United States v. Riccio*, 726 F.2d 638, 641 (10th Cir. 1984)).

[12] *United States v. Corral-Corral*, 899 F.2d 927, 934 (10th Cir. 1990) (quoting *Gates*, 462 U.S. at 235).

4

that Defendant is unable to demonstrate falsity by a preponderance of the evidence. Moreover, even if the Court set aside the allegedly false material, and included the omitted material, the remaining information in the affidavit would have been sufficient to support probable cause to search the Shawnee Road residence.

### A.     Paragraph 21

Defendant urges that by comparing the statements in the affidavit to the pole camera still photographs, it is clear that Agent Hajek's affidavit contained intentionally false statements or material omissions. Defendant first points to paragraph 21 of the affidavit, which summarizes footage from August 22, 2014. Defendant complains that the affidavit fails to explain the reason for the vehicle traffic referenced the affidavit—there was a construction job going on at the residence. The Court finds that this omission was neither material, nor intentionally omitted in an effort to mislead Judge O'Hara. Agent Hajek willingly conceded during his testimony that many of the vehicles seen coming and going from the Shawnee Road address appeared to be involved in some sort of construction project. But even conservatively disregarding vehicles that investigators attributed to the construction project,[13] Agent Hajek testified that he believed seven out of the fourteen vehicles that arrived and departed after brief periods at the residence that day were not associated with the construction project. Specifically, paragraph 21 references a white Escalade and a maroon Chevy Malibu that officers had previously associated with methamphetamine sales during controlled purchases earlier that year. Investigators had previously identified the Escalade during a controlled drug purchase in March 2014, when it was

---

[13]For example, Agent Hajek testified that the gray vehicle seen at 11:29 a.m. was not included in the vehicles referenced in the affidavit, even though investigators believed the driver to be co-defendant Jesse Silva. The driver can be seen holding a small white bag and walking around to the backyard construction site and stayed for approximately five minutes.

driven by suspected co-conspirator Mario Saucedo-Avalos.[14] The Malibu had been associated with a June 2014 controlled drug purchase involving alleged co-conspirator Octavio Valdez-Aguirre.[15] Also among the seven suspicious vehicles was a Dodge Stratus that investigators had observed at the Shawnee Road residence on other occasions, when there was no construction activity. The license plate of that vehicle was registered to the wife of another alleged co-conspirator.

Defendant has failed to show by a preponderance of the evidence that Agent Hajek intentionally omitted material information about a construction project at the residence when he executed the search warrant affidavit. Agent Hajek testified that each of the three paragraphs in the affidavit about the pole camera footage were intended to be summaries of the material information gleaned on those days. Indeed, the search warrant affidavit makes clear that Agent Hajek did not include "each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish the foundation for an order authorizing the requested search warrant."[16] The Court credits Agent Hajek's testimony that in his training and experience, seven vehicles in one day constitutes traffic that is consistent with drug trafficking, particularly given his knowledge that the Escalade and Malibu were previously involved in drug purchases. In light of this testimony, and the corroborating evidence that the non-construction related vehicles were tied to known drug transactions involving targets of the investigation, the fact that a construction project was going on that day at the residence was not a

---

[14] Ex. A at 8 ¶ 9.

[15] Ex. A at 10 ¶ 15.

[16] Ex. A at 4 ¶ 5.

material omission.

The Court also agrees with the Government that even if information was added to paragraph 21 indicating that about half of the fourteen vehicles that stopped by the residence are attributable to a construction project, it would not change Agent Hajek's statement that he knew the nonconstruction-related activity to be consistent with drug trafficking.  It  likewise would not change the probable cause showing.  Defendant complains that the affidavit fails to mention whether Saucedo-Avalos was present at the Shawnee address, and fails to explain any other connection between the two prior drug sales and the Shawnee Road address.  However, in paragraphs 9 and 15 of the affidavit, Agent Hajek did include information about those prior drug sales involving the Escalade and Malibu.  And had more information about these connections been included, it would certainly not take away from a showing of probable cause; it would add more weight to Agent Hajek's probable cause showing.  Thus, not only does this cut against Defendant's argument that Agent Hajek intentionally withheld material information, but it also supports the Court's finding that had the omitted information been included, it would still give rise to a showing of probable cause.  Had Agent Hajek included more information in that paragraph about the known associations the investigators had made with each of the suspicious vehicles (not to mention those that they conservatively attributed to construction activity), it would have provided Judge O'Hara with more, not fewer, facts to support a finding of probable cause to believe drug trafficking activity was occurring at the Shawnee Road address.

### B.     Paragraph 22

Next, Defendant points to paragraph 22 of the affidavit, which summarizes footage from August 27 involving a black sedan at the residence.  Defendant maintains that the statements in

this paragraph are false or incomplete because (1) the black sedan did not arrive for the first time at 8:14 p.m., (2) the footage does not show that the black sedan's occupants performed any counter-surveillance when they returned to the house at 8:14 p.m., and (3) the items removed from the trunk of that vehicle were clearly bags of ice and a case of beer, rather than drugs. Defendant characterizes the short trip by the sedan (it had arrived and departed several times that day) as a beer run.

The Court cannot find that the affidavit misrepresented the arrival time of the black sedan. While it is true that the vehicle did not arrive for the first time at 8:14 p.m., the affidavit does not represent that it did. There is nothing false, much less intentionally false, about the statement that "on 8/27/2014, at approximately 8:15 pm, a dark sedan pulled into 435 Shawnee Road in Kansas City, Kansas." Nor does the Court find it material that Agent Hajek omitted information that the vehicle had first arrived earlier that evening. If anything, the fact that the vehicle had arrived and departed four different times on August 27 buttresses Agent Hajek's probable cause showing given that he had already opined that such traffic was consistent with drug activity.

The Court has reviewed this portion of the pole camera footage and the photographs submitted by Defendant, giving greater weight to the video footage than it does the screen shots submitted by Defendant. The screen shots do not provide a full depiction of the images relied upon by Agent Hajek when he executed the search warrant affidavit. The activity witnessed by Agent Hajek can only be gleaned from viewing the video itself—there is no way for the Court to discern, for example, whether the sedan's occupants conducted counter-surveillance by looking at five snapshots of video footage that spanned a period of fifteen minutes. Agent Hajek's

testimony was clear that he did not view screen shots of the pole camera footage when executing the search warrant. Therefore, the Court considers the evidence as it was viewed by Agent Hajek at the time he made the representations in the affidavit.

Although the footage is grainy, the Court finds that it was reasonable for Agent Hajek to conclude that the sedan's occupants were conducting counter-surveillance. The sedan came and went from the residence several times that day. But at 8:14 p.m., the footage shows the sedan arriving and eventually five individuals exited the vehicle. Two people went to each side of the vehicle and the others approached the front of the residence. They appear to look around at each side of the house and across the street. Next, two of the occupants opened the trunk. One person removed what appears to be two white bags. The other person removed what appears to be a box, although the camera is trained on his back and he is holding the item in front of his body. None of these items are clearly identifiable in the footage. One of the four individuals then walked to the left side of the residence; another walked to the right side of the residence. They both reappeared at the front of the house within about one minute. The four individuals socialized in front of the house for awhile, and appeared to be drinking beverages. At 8:19 p.m., one of them walked around to the left side of the house again and looked around. At 8:21, another individual got in a green SUV parked at the residence and drove away. Then again, an individual walked behind the residence, walked around the left side of the house, and returned within a minute.

Agent Hajek testified that it was impossible to tell what was inside the bags that were unloaded from the sedan's trunk. He testified further that although it is true that later footage shows several individuals socializing in front of the residence, he did not believe the activity

referenced in the affidavit was consistent with a beer run for the following reasons: the sedan came and went from the residence four times that day during a six hour period, and one of the occupants, after unloading the black sedan, left again in a green SUV at 8:21 p.m.

The Court credits Agent Hajek's testimony and finds that the pole camera footage does not show that his assertions in paragraph 22 are intentionally or recklessly false, nor that he omitted material information. Whether or not the occupants of the sedan later socialized together is immaterial to his observations that the dark sedan pulled into the driveway, multiple occupants got out of the vehicle, unloaded unidentifiable items from the trunk, and conducted counter-surveillance. The Court does not find that paragraph 22 omitted information that was relevant to the probable cause inquiry or that Agent Hajek intentionally, or with reckless disregard for the truth, misrepresented the pole camera footage in his affidavit.

### C. Paragraph 23

Finally, Defendant contests Agent Hajek's statements in paragraph 23 of the affidavit, relating to the footage from August 31. Defendant points to the falsity of Agent Hajek's statement that the white Cadillac Escalade arrived at the residence at 4:27 a.m., and that three occupants got out of the vehicle. Defendant also complains that the affidavit omits that after individuals are seen entering and exiting the compartments of the Escalade, they transplanted pine trees from an area of land across the street from the Shawnee Road address to the backyard of the Shawnee Road address.

Defendant is correct that the pole camera footage does not support Agent Hajek's representation in the affidavit that the white Escalade arrived at 4:27 a.m., nor that three people exited the vehicle. Instead, the footage shows that the Escalade backed into the driveway at

11:35 p.m. and stayed there all night. Agent Hajek admitted in his testimony that this statement was false, but that this mistake was unintentional and was not designed to mislead Judge O'Hara. Rather than three individuals exiting the vehicle at 4:27 a.m., at about 4:30 a.m., with the back hatch of the Escalade open, several individuals entered and exited the compartments of the parked vehicle. In fact, the hatch was left open for a long time; individuals were in and out of the vehicle approximately twenty-five times that night. Agent Hajek testified that investigators identified Saucedo-Avalos as the individual at the back of the Escalade; he had arrived earlier in a different vehicle that investigators had connected to another alleged co-conspirator. The Court finds that Defendant has not shown by a preponderance of the evidence that these mistakes were intentionally made, or made with reckless disregard for the truth. Instead, these mistakes were at best innocent and at worst negligent inaccuracies that do not rise to the level of intentional falsity that would entitle Defendant to a *Franks* hearing.[17] And these inaccuracies cannot invalidate this otherwise valid warrant. As described throughout this Order, there were many other accurate statements in the warrant that supported a finding of probable cause.

Defendant contests Agent Hajek's representation that "[a]t approximately 4:40 a.m., four hispanic males walked across Shawnee Road, carrying several items behind the residence," claiming that the video makes clear that these hispanic males are merely transplanting pine trees from the yard across the street. Agent Hajek testified that when he viewed the footage in August 2014, he believed the individuals were carrying bags to the back of the residence from across the street and then sweeping the street, activity that he believed was consistent with transporting drugs, especially given that it occurred around at 4:30 a.m. He did not identify the items as pine

---

[17]*See United States v. Corral-Corral*, 899 F.2d 927, 933–34 (10th Cir. 1990).

trees, or as bags because he could not tell what they were.  Agent Hajek testified that it was impossible to tell from the footage exactly what these individuals were doing across the street, or what they were carrying, because the individuals walked into a dark portion of the recorded area. Agent Hajek contends that "items," was the most accurate description of what he perceived. Moreover, Agent Hajek testified that he did not reasonably believe that these individuals were engaging in legitimate landscaping activities at 4:40 a.m.

The Court's own review of the pole camera footage supports Agent Hajek's testimony that he could not tell what these individuals were carrying from across the street to the residence, but that he reasonably did not believe them to be engaged in landscaping activities.  All of the activity occurred at night, which contributes toward a less than clear image from the pole camera.  The area across the street where the very small pine trees were planted was not illuminated and it is impossible to tell what these men are doing in the corner of the screen.  The Court finds that it was reasonable for Agent Hajek to believe that they were carrying bags, or "items" other than very small pine trees given the time of night, the poor quality of the footage, the fact that they returned to the area across the street with less items than the took to the residence, and that they were sweeping the street behind them.  The individuals carried five or six items across the street back to the residence, and then returned with only four items. Defendant does not make a substantial showing that Agent Hajek purposefully omitted material information, or intentionally misrepresented the pole camera footage with respect to paragraph 23.

Even if the Court altered the search warrant to excise the alleged falsities and add more information about the strange conduct with the pine trees, there would still be adequate

information upon which Judge O'Hara could find probable cause exists to issue the search warrant. Paragraph 23 would still include information that a known drug dealer, Saucedo-Avalos, and a vehicle associated with him and with drug purchases, was in the driveway of the residence with an open hatch and that several hispanic males were entering and exiting the vehicle and the residence in the middle of the night. This information certainly contributed toward Agent Hajek's opinion that in his training and experience, the residence was being used as a drug storage location. The Court also finds that if Agent Hajek had included a detailed description of the pine tree activity, it too would have contributed toward a finding of probable cause. Three hispanic males, after being seen entering and exiting the Escalade, walked across the street and returned carrying several very small pine trees that they had pulled from the ground. They walked around to the back of the residence with those trees and returned to the Escalade from around the house several minutes later. Then, one of the individuals walked into the street where the three men had crossed with the trees and appeared to examine and sweep the street with his feet. He returned a few minutes later with a broom and swept the area. Then several minutes later, three individuals walked from the side of the house again and crossed the street into the unilluminated portion of the screen with four items that may be pine trees. The Court agrees that this activity appeared highly suspicious and when coupled with the other associations drawn from the search warrant affidavit, would have contributed toward a finding of probable cause to believe evidence of drug activity would be found at that residence.

"In the context of a *Franks* challenge, the focus is the credibility of the affiant."[18] The Court finds Agent Hajek's testimony to be credible; he had a reasonable basis for the statements

---

[18] *Corral-Corral*, 899 F.2d at 934 (quoting *Franks v. Delaware*, 438 U.S. 154, 171 (1978)).

he made in the search warrant affidavit and for his failure to include certain information about the pole camera footage. For all of the reasons stated above, the Court denies Defendant's motion to suppress on the basis that the search warrant affidavit included material omissions or false information. Defendant has failed to make a substantial preliminary showing of falsity. Moreover, even if the omitted information was added to this search warrant affidavit and the few inaccuracies were taken out, the search warrant affidavit would still provide the probable cause to believe that investigators would find evidence of drug activity at the residence.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Juan Manuel Lopez-Garcia's Motion to Suppress Evidence (Doc. 113) is **denied**.

**IT IS SO ORDERED**.

Dated: July 20, 2015

S/ Julie A. Robinson

JULIE A. ROBINSON

UNITED STATES DISTRICT JUDGE