IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

     Plaintiff,

     v.

JUAN MANUEL LOPEZ-GARCIA,

     Defendant.

Case No. 14-20071-JAR-07
(This Document also Relates to *Lopez-Garcia v. United States,* No. 18-2448-JAR)

## MEMORANDUM AND ORDER

This matter comes before the Court on Petitioner Juan Manuel Lopez-Garcia's Motion to Correct Illegal Sentence Pursuant to 28 U.S.C. § 2255 (Doc. 396), Motion for Appointment of Counsel (Doc. 408), Motion for Return of Privileged Information Under Rule 41(g) (Doc. 399), and Motion for Abeyance (Doc. 418).  For the reasons stated below, Petitioner's § 2255 motion is dismissed without an evidentiary hearing, his other motions are denied, and a Certificate of Appealability is denied.

**I.**     **Procedural History**

    A.    *Pre-Trial*

On September 5, 2014, the government filed a criminal complaint against Petitioner.[1] Following his arrest, two superseding indictments were filed, expanding the charges and number of codefendants.[2]  Attorneys Kenton Hall and Preciliano Martinez represented Petitioner at trial.

    Prior to trial, counsel for Petitioner filed a motion to suppress evidence, challenging the affidavit underlying a search warrant.[3]  After a hearing and consideration, the Court denied this

---

[1] Doc. 1.

[2] Docs. 50, 190.

[3] Doc. 113.

motion.[4]  Counsel also sought leave to inspect transcripts from the grand jury, disclosure of confidential informants, and production of coconspirator statements.[5]  These motions were granted.[6]

Following these pretrial motions, the government filed a Second Superseding Indictment.[7]  Count One of the Second Superseding Indictment charged Petitioner and three codefendants with conspiring to possess with intent to distribute more than 50 grams of methamphetamine.  Count Six charged Petitioner as an illegal alien possessing firearms, listing four firearms, ammunition, and assault rifle magazines.  The Second Superseding Indictment also included multiple forfeiture allegations against Petitioner for both the firearms and related items as well as proceeds of the conspiracy.[8]

Two weeks prior to trial, on December 30, 2015, the government filed an amended witness list.[9]  The list included codefendant Jessie Silva, who entered into a plea agreement six months before trial.[10]

B.      *Trial and Appeal*

Trial lasted for eleven days from January 12 to January 26, 2016.  The jury returned a guilty verdict against Petitioner on both Counts One and Six.[11]  On June 6, 2016, the Court

---

[4] Doc. 172.

[5] Docs. 114, 115, 116.

[6] Doc. 143.

[7] Doc. 190.

[8] *Id.*

[9] Doc. 285.

[10] Docs. 135, 159.

[11] Doc. 312.

sentenced Petitioner to life imprisonment for Count One and ten years' imprisonment for Count Six.[12]

On the same day that Martinez withdrew as counsel, Petitioner, through attorneys Hall and Stephen Patton, appealed his sentence, challenging it as both procedurally and substantively unreasonable.[13]  Petitioner argued that his sentence was procedurally unreasonable because the Court imposed a two-level sentencing enhancement for obstruction of justice based on unreliable hearsay evidence and despite the lack of any direct evidence connecting him to the purported threats against witnesses and potential witnesses.  In addition, he asserted that his sentence was substantively unreasonable in comparison to sentences imposed on codefendants, his lack of criminal history, and based on various policy arguments related to the purposes of sentencing. While his appeal was pending, Petitioner sent a letter to the Tenth Circuit to provide supplemental authority in support of Sixth Amendment claims he wished to raise, but the Tenth Circuit declined to consider it in light of the counseled brief already on file.  The Tenth Circuit affirmed his sentence on November 14, 2017, and the mandate issued on December 6, 2017.[14]

C.      *Post-Appellate Motions*

Subsequently, Petitioner filed a *pro se* Motion to Correct Illegal Sentence Pursuant to 28 U.S.C. § 2255 on August 27, 2018.  Several months later, Petitioner filed a Motion for Return of Property Under Fed. R. Crim. P. 41(g).[15]  In his motion, Petitioner briefly notes the facts of the *Black* case and assert that he had been housed at CCA during 2015 and 2016, during which time the government had acquired certain audio and video recordings from the prison surveillance

---

[12] Doc. 339.

[13] Docs, 341–42; *United States v. Lopez-Garcia*, 713 F. App'x 785, 789 (10th Cir. 2017).

[14] Doc. 382.

[15] Doc. 399.

system.[16]  The government admits that it obtained videos from CCA in connection with the *Black* case, which focused on drug and contraband trafficking inside CCA.  The government's possession of these recordings came to light in August 2016, when then-Special Assistant United States Attorney ("SAUSA") Erin Tomasic and AUSA Kim Flannigan accused defense attorney Jacquelyn Rokusek of "jeopardiz[ing] their investigation" in *Black* based on information they claimed to have gleaned from the video recordings.[17]  The defense also discovered that the United States Attorney's Office for the District of Kansas ("USAO") had routinely obtained CCA recorded attorney-client phone calls, and that it did so without notice to the attorneys, clients, or courts.[18]

The *Black* investigation revealed in relevant part that CCA recorded some of the outgoing phone calls between detainees and their counsel using equipment provided by Securus Technologies, Inc. ("Securus").[19]  The Court discussed in detail the flaws in CCA's privatization procedures and noted that as a result of these flaws, "calls between defense attorneys and clients at CCA were routinely recorded even when the attorney properly requested privatization."[20]  The Court further detailed how prosecutors at the Kansas City Office of the USAO not only knew that CCA recorded such calls, but that they could obtain the resulting recordings by making "a

---

[16] *United States v. Carter*, Case No. 16-20032-JAR, Doc. 758 (D. Kan. Aug. 13, 2019) ("*Black* Order").  As discussed in that Order, the Sixth Amendment claims stem from recordings of conversations and meetings with counsel while they were detained at Corrections Corporation of America ("CCA").  That facility has since been renamed CoreCivic.  For convenience, the Court refers to it as CCA in this Order. A number of § 2255 motions related to the CCA recordings have been collected together under 19-2491, with most petitioners in those cases represented by the FPD.  Petitioner's motion is not among those collected motions, but facts and issues that have arisen in the collected cases are briefly included here to frame some of Petitioner's claims.

[17] *Id.* at 70–80.

[18] *Id.* at 29–30.

[19] *Id.* at 5, 80, 85.

[20] *Id.* at 80–88.

general request for detainee calls."[21]  The Court found that the government routinely made requests for detainee calls—without taking any precautionary measures to avoid protected communications—and routinely received recordings of attorney-client calls as a result.[22]

Petitioner argues that the government would have had even greater incentive to violate his Sixth Amendment rights than it did in the *Black* case, based on the nature of allegations in the indictments and the role the government believed he played in a drug cartel.[23]  He does not identify any meetings with attorneys during that time of which the government might have obtained a recording.  He requested a return of any privileged information the government secured.

On September 19, 2019, Petitioner moved for appointment of counsel, asserting that he was entitled to representation by the Federal Public Defender ("FPD") for his Sixth Amendment claims under Standing Order 18-3.[24]  He states that he did not know he might be entitled to representation until he learned that codefendant Silva was represented by appointed counsel under Standing Order 18-3 for his § 2255 motion.  Based on the dates of his incarceration, he contends that he should be included among the petitioners represented by the FPD.

The government responded to Petitioner's § 2255 motion on December 3, 2020.  The government disputed each of Petitioner's claims, and alleged that Petitioner had procedurally defaulted on every claim other than those related to ineffective assistance of counsel.[25]  Further, common throughout most of the government's arguments is an observation that the Petitioner did

[21] *Id.* at 106.

[22] *Id.* at 101–06.

[23] Doc. 399.

[24] Doc. 408.  Standing Order 18-3 appointed "the Federal Public Defender to represent any defendant from the District of Kansas who may have a post-conviction Sixth Amendment claim based on the recording of in-person attorney-client meetings or attorney-client phone calls by any holding facility housing federal detainees within this district."

[25] Doc. 1-1.

not allege sufficient supporting facts for any of his claims, failing to meet the minimal standard for raising a § 2255 claim.  The government's response did not address Petitioner's Rule 41(g) filing or request for appointment of counsel.

On January 13, 2021, Petitioner filed a Motion for Abeyance, noting again that codefendant Silva had been appointed counsel for his § 2255 motion related to the *Black* case.[26] He also observes that he had received a letter regarding the class action suit resulting from the facts underlying the *Black* case, and that he had not yet received a response to his Rule 41(g) motion or his request for appointment of counsel.  He contends that the governmental misconduct identified in the *Black* case bolsters his prosecutorial misconduct claim in his § 2255 motion, and that the government is attempting to avoid accountability for the 41(g) motion by resolving the § 2255 motion.  He urges the court to hold resolution of his § 2255 motion in abeyance until it can also resolve his Rule 41(g) motion, which has been complicated by the governmental conduct at issue in the *Black* case, the death of appellate counsel, and the inability of his surviving trial counsel to recall any meetings or review late counsel's file.

## II.    Legal Standard Under 28 U.S.C. § 2255

Under 28 U.S.C. § 2255(a):

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorization by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

According to Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts: "the judge who receives the motion must promptly examine it.  If it plainly

---

[26] Doc. 418.

appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion."

An evidentiary hearing must be held on a § 2255 motion "unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief."[27]  Petitioner must allege facts which, if proven, would warrant relief from his conviction or sentence.[28]  An evidentiary hearing is not necessary where the factual allegations in a § 2255 motion are contradicted by the record, inherently incredible, or when they are conclusions rather than statements of fact.[29]

Finally, Petitioner appears *pro se*.  Therefore, his pleadings are to be construed liberally and not held to the standard applied to an attorney's pleadings.[30]  If a petitioner's motion can be reasonably read to state a valid claim on which he could prevail, a court should do so despite a failure to cite proper legal authority or follow normal pleading requirements.[31]  It is not, however,  "the proper function of the district court to assume the role of advocate for the *pro se* litigant."[32]  For that reason, the court shall not supply additional factual allegations to round out a petitioner's claims or construct a legal theory on his behalf.[33]

---

[27] 28 U.S.C. § 2255(b).

[28] *See Hatch v. Oklahoma*, 58 F.3d 1447, 1471 (10th Cir. 1995).

[29] *Arredondo v. United States,* 178 F.3d 778, 782 (6th Cir. 1999) (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)); *see also Hatch*, 58 F.3d at 1471 (stating that "the allegations must be specific and particularized, not general or conclusory"); *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (rejecting ineffective assistance of counsel claims which are merely conclusory in nature and without supporting factual averments).

[30] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[31] *Id*.

[32] *Id*.

[33] *See Whitney v. State of New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997).

### III.  Analysis

Lopez-Garcia raises numerous claims for relief: (1) the Court's findings at sentencing regarding an enhancement for obstruction violated *Apprendi*, resulting in an unconstitutionally disproportionate sentence; (2) the government violated the Sixth Amendment rights of codefendants Jesus Octavio Valdez Aguirre, Mario Saucedo Avalos, and Jessie Silva when they began cooperating with the government after their arrest, and any evidence produced from them was inadmissible; (3) the government committed prosecutorial misconduct when it violated his Fifth Amendment rights by not timely informing him that several codefendants were cooperating witnesses; (4) the indictment failed to advise him of the elements of the charged offenses, failed to allege particular facts to support the "verbatim recitation of the language of the criminal statute[s]," and alleged different facts than were presented to the grand jury, constituting Fifth Amendment due process violations; (5) he was subject to selective and vindictive prosecution after he asserted his right to a jury trial, despite the absence of any evidence that he was involved in a drug conspiracy; and (6) trial and appellate counsel were constitutionally ineffective.[34]

#### A.    *Procedural default*

Before addressing the merits of Petitioner's claims, the Court must address the government's contention that Petitioner has procedurally defaulted each of the non-ineffective assistance of counsel claims.  Petitioner's Motion for Abeyance, while recognizing that the government had responded to his § 2255 motion, did not address the government's procedural default argument or attempt to establish cause for failing to raise the arguments on appeal.[35]

---

[34] Doc. 396.

[35] *See* Doc. 418.

Courts usually will not entertain a § 2255 motion if the movant did not raise the claim on direct appeal.[36] "The procedural-default rule is neither a statutory nor a constitutional requirement, but it is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments."[37] If the government raises a procedural bar, courts must enforce it unless cause and prejudice or a miscarriage of justice is shown.[38]

As a threshold issue, the Court first determines whether Petitioner's claims fall within an exception to the procedural default doctrine for claims that could not be presented without further factual development. The Supreme Court has determined that the procedural default doctrine is inapplicable during collateral proceedings where the petitioner's claim is based on facts that were outside the appellate record and not open to consideration and review on direct appeal.[39] Courts will thus dismiss a procedural default defense where the factual predicate for the petitioner's claim is not within the appellate record and further factual development is necessary to resolve the claim.[40]

The government contends that Petitioner procedurally defaulted each of the non-ineffective assistance claims by failing to raise them on direct appeal. The Court agrees. The

---

[36] *United States v. Torres-Laranega*, 473 F. App'x 839, 842 (10th Cir. 2012).

[37] *United States v. Snyder*, 871 F.3d 1122, 1126–27 (10th Cir. 2017) (quoting *Massaro v. United States*, 538 U.S. 500, 504 (2003)).

[38] *United States v. Allen*, 16 F.3d 377, 378 (10th Cir. 1994).

[39] *Bousley v. United States*, 523 U.S. 614, 621–22 (1998) (holding procedural default doctrine inapplicable where the claim rests on facts that were "dehors the record and their effect on the judgment was not open to consideration and review on appeal" (quoting *Waley v. Johnston*, 316 U.S. 101, 104 (1942) (per curiam))).

[40] *See, e.g.*, *Massaro*, 538 U.S. at 504–05 (holding that a § 2255 motion is preferable to a direct appeal because, when a claim is brought on direct appeal, "appellate counsel and the court must proceed on a trial record not developed precisely for the object of litigating or preserving the claim and thus often incomplete or inadequate" for the purpose of litigating or preserving the claim); *United States v. Chalan*, 438 F. App'x 710, 712, (10th Cir. 2011) (unpublished) (recognizing that "if the factual predicate for a claim is not available, it would appear to qualify under *Bousley* as a 'claim[ ] that could not be presented without further factual development'" (alteration in original) (quoting *Bousley*, 523 U.S. at 621–22)).

identified claims do not fall within the exception for procedural default, as they are all based on facts or allegations that were within the appellate record and available for consideration on direct appeal.  Although Petitioner's appeal included an argument that his sentence was disproportionate, this was his basis for attacking the substantive reasonableness of his sentence and was not argued as an Eighth Amendment violation.  None of the claims, even construed as broadly as possible from the *pro se* § 2255 motion, were raised on appeal, nor does Petitioner argue that appellate counsel erred by failing to raise any of these issues on appeal.  The only issue Petitioner has contended he wanted raised on appeal that counsel declined was an ineffective assistance claim, which counsel advised had to wait for collateral review.  Petitioner has not demonstrated any cause for failing to raise these issues on direct appeal.  Further, Petitioner has not claimed or demonstrated that manifest injustice would result from a denial of habeas review of these claims.

Lastly, a petitioner may pursue his claims notwithstanding the procedural bar based on a "credible showing of actual innocence."[41]  This is a "high hurdle" that Petitioner simply cannot and does not attempt to clear.[42]  Petitioner does not allege actual innocence.  He argues at one point that the government failed to present evidence he was involved in a drug conspiracy, but that is, broadly construed, a claim of legal innocence, not factual innocence.  As noted above, Petitioner admitted at sentencing, through counsel, that there was sufficient evidence to support his drug conspiracy conviction, which would undermine a claim of actual innocence if it had been made.[43]  Petitioner has not demonstrated or claimed actual innocence and cannot rescue the above claims on this ground.

---

[41] *McQuiggin v. Perkins*, 569 U.S. 383, 392, (2013).

[42] *See United States v. McAbee*, 685 Fed. App'x 682, 685 (10th Cir. 2017).

[43] Doc. 368 at 20.

Although petitioner has procedurally defaulted his claims, other than those alleging ineffective assistance of counsel, the Court will also briefly review the substance of each claim, in order to be thorough.  As indicated below, Petitioner's claims would fail even if he had not defaulted on them.

### B.    Apprendi *& the Eighth Amendment*

First, Lopez-Garcia argues that his sentence is illegal, imposed in violation of both *Apprendi* and the Eighth Amendment.[44]  With respect to *Apprendi*, he asserts that the Court enhanced his sentence based upon factfinding conducted at sentencing.  This argument has been foreclosed by the Tenth Circuit.  The Tenth Circuit recognizes a Supreme Court holding that "*Apprendi* does not apply to the present [post-*Booker*] advisory-Guidelines regime," and any potentially heightened evidentiary burden for sentencing enhancements has been hypothetically reserved for "imposition of a Guidelines enhancement that increases a sentence by an extraordinary or dramatic amount."[45]

Lopez-Garcia acknowledges that the applicable sentencing range was ten years to life imprisonment based just on the possession with intent to distribute methamphetamine charge.[46]  The crimes of conviction and drug quantities involved set a Guideline base offense level of 48, and the obstruction enhancement added two to Petitioner's offense level, raising it to 50.  It was then reduced to the maximum of 43, however, five levels lower than that which existed even without the obstruction enhancement.[47]  Thus, the sentencing enhancement had no impact on the Petitioner's sentencing range, which extended to life imprisonment, and he has not demonstrated

---

[44] Doc. 396 at 3–5 (citing *Apprendi v. New Jersey*, 530 U.S. 466 (2000)).

[45] *United States v. Ray*, 704 F.3d 1307, 1314 (10th Cir. 2013) (citing first *United States v. Booker*, 543 U.S. 220, 259 (2005) and then *United States v. Olsen*, 519 F.3d 1096, 1105 (10th Cir. 2008)) (quotation omitted).

[46] Doc. 396 at 3.

[47] Doc. 368 at 166.

any entitlement to relief on this ground.  Lopez-Garcia has not demonstrated that the enhancement increased his sentence, which could have been life imprisonment without the enhancement, much less that it increased his sentence by an extraordinary amount.

Next, Petitioner claims that his life sentence violates the Eighth Amendment bar against cruel and unusual punishments, contending that his sentence was disproportionate to the severity of the crime and in comparison to his codefendants.  This argument is meritless.  The Supreme Court has recognized a constitutional right under the Eighth Amendment to proportionality between the sentence and the crime.[48]  The constitutional right to proportionality is "narrow," forbidding "only extreme sentences that are grossly disproportionate to the crime."[49]

First, "the Court considers all of the circumstances of the case to determine whether the sentence is unconstitutionally excessive."[50]  Under this approach, the Court has held unconstitutional a sentence of life without parole for the defendant's seventh non-violent felony, which was passing a worthless check.[51]  In the seminal case *Harmelin v. Michigan*, in which the offender was sentenced under state law to life without parole for possessing a large quantity of cocaine, the Supreme Court upheld the sentence.[52]  A closely divided Court concluded that the Eighth Amendment contains a "narrow  proportionality principle," that "does not require strict proportionality between crime and sentence" but rather, "forbids only extreme sentences that are 'grossly disproportionate' to the crime."[53]

---

[48] *Lockyer v. Andrade*, 538 U.S. 63, 77 (2003).

[49] *United States v. Williams*, 576 F.3d 1149, 1165 (10th Cir.  2009); *see also Lockyer*, 538 U.S. at 77 ("The gross disproportionality principle reserves a constitutional violation for only the extraordinary case.").

[50] *Graham v. Florida*, 560 U.S. 48, 59 (2010).

[51] *Solem v. Helm*, 463 U.S. 277 (1983).

[52] 501 U.S. 957 (1991).

[53] *Id.* at 997, 1000–1001 (KENNEDY, J., concurring in part and concurring in judgment).  Again closely divided, the Court rejected a challenge to a sentence of 25 years to life for the theft of a few golf clubs under California's so-called three-strikes recidivist sentencing scheme.  *Ewing v. California*, 538 U.S. 11 (2003).  The

The controlling opinion in *Harmelin* explained its approach for determining whether a sentence for a term of years is grossly disproportionate for a particular defendant's crime.  A court must begin by comparing the gravity of the offense and the severity of the sentence.[54]  "[I]n the rare case in which [this] threshold comparison . . . leads to an inference of gross disproportionality," the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions.  If this comparative analysis "validate[s] an initial judgment that [the] sentence is grossly disproportionate," the sentence is cruel and unusual.[55]  This only occurs in "exceedingly rare" and "extreme" cases.[56]

For the first prong in the proportionality analysis, Lopez-Garcia only identifies himself as a first-time non-violent offender and makes no effort to compare the gravity of the offense of conviction with his sentence.  Petitioner's self-description is misleading, given the threatening behavior that resulted in a sentencing enhancement for obstruction and the number of firearms found in Petitioner's possession.[57]  His attempt to portray himself as comparable to non-violent offenders in past cases is not persuasive.

Further, the quantities of methamphetamine and other drugs Petitioner was convicted of trafficking are substantial, with one codefendant stating he received one pound of methamphetamine a week for a year from Petitioner and ten to twenty pounds over the period of

---

Court has also upheld a sentence of life with the possibility of parole for a defendant's third nonviolent felony, the crime of obtaining money by false pretenses, *Rummel v. Estelle*, 445 U.S. 263 (1980), and a sentence of 40 years for possession of marijuana with intent to distribute and distribution of marijuana, *Hutto v. Davis*, 454 U.S. 370 (1982) (per curiam).

[54] *Harmelin*, 501 U.S. at 1005 (KENNEDY, J., concurring in part and concurring in judgment).

[55] *Id.*

[56] *Barber v. Jones*, 279 F. App'x 710, 716 (10th Cir. 2008) (quoting *Lockyear v. Andrade*, 538 U.S. 63, 73 (2003)).

[57] Doc. 368 at 15, 162–66.

a few months after that year.[58]  The actual quantity attributed in the Presentencing Investigation Report was 11.486 kilograms of methamphetamine, which the Court identified as an "extremely conservative" measure, and alone justified the highest possible base offense level under the Guidelines.[59]  This conservative attribution is more than twenty times the amount required to trigger a Guidelines range of ten years to life.[60]  There is no implication of disproportionality between the life sentence imposed, which was the top end of the Guidelines range, and the crime of conviction that involved considerable quantities of methamphetamine.

Even if Petitioner had met the high threshold to create an implication of disproportionality, comparing his sentence to those of his codefendants does not justify relief. Petitioner was identified as the ringleader for a cartel drug conspiracy, overseeing the activities of his various codefendants and garnering an upward adjustment in offense level as an organizer or leader.[61]  A number of Petitioner's codefendants were cooperating witnesses who pled guilty, and they were eligible for various forms of sentencing relief not available to the Petitioner, who largely continued to challenge the extent of his guilt through sentencing and never provided cooperation to the prosecution.[62]  Whatever substantive comparison is possible between Petitioner and his dissimilarly-situated codefendants, nothing suggests any disproportionality, much less a "gross disproportionality" that would indicate a cruel and unusual punishment. Petitioner has not demonstrated any entitlement to relief from his sentence on this basis.

---

[58] *Id.* at 156, 159.

[59] *Id.* at 158; Doc. 337 ¶ 49.

[60] 21 U.S.C. § 960(b)(1)(H) ("In the case of a violation . . .  involving . . . 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers or 500 grams or more of a mixture containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomer . . . the person committing such violation shall be sentenced to a term of imprisonment of not less than 10 years and not more than life[.]").

[61] Doc. 368 at 159–60.

[62] *Id.* at 160.  *See Robison v. Ward*, 232 F. App'x 785, 790 (10th Cir. 2007) (noting Tenth Circuit precedent that "disparate sentences do not violate the Eighth Amendment when one defendant receives a sentencing reduction for cooperation with the government.") (citing *United States v. Rackstraw*, 7 F.3d 1476, 1482-83 (10th Cir. 1993)).

14

This assessment is consistent with the Tenth Circuit's affirmation of Lopez-García's sentence on his direct appeal.  The Tenth Circuit noted that the comparator codefendants both pled guilty and were lower in the cartel hierarchy, and stated that "[t]he seriousness of Defendant's conduct is reflected in his total offense level of 50—seven levels higher than needed to trigger an advisory life sentence under the Guidelines."[63]  There is no meaningful comparison possible between Petitioner and his codefendants, and no comparison can support his disproportionality claim.

Finally, the Tenth Circuit has affirmed life sentences for possession of controlled substances with intent to distribute in other cases, further undermining any claim that Petitioner's sentence is disproportionate or outside the range of reasonable sentences.[64]  Mirroring the Petitioner's circumstances, the Tenth Circuit has affirmed a life sentence for a defendant convicted of possessing 50 grams or more of methamphetamine with intent to distribute it who had no criminal history, sentencing enhancements for a leadership role in the criminal activity, and a total Guidelines offense level that had to be adjusted down to the maximum of 43.[65]  Petitioner has not identified any aspect of his life sentence that marks it as one of the exceedingly rare instances of unconstitutionally disproportionate sentencing.  Petitioner's claim is denied on this ground.

---

[63] *United States v. Lopez-Garcia*, 713 F. App'x 785, 789 (10th Cir. 2017).

[64] *See, e.g., United States v. Williams*, 576 F.3d 1149, 1165 (10th Cir. 2009) (upholding concurrent life sentences for cocaine possession against an Eighth Amendment challenge); *United States v. Cortez-Diaz*, 565 F. App'x 741, 751 (10th Cir. 2014) (affirming life sentence for defendant convicted of methamphetamine trafficking); *United States v. McKneely,* 69 F.3d 1067, 1070, 1080–81 (10th Cir. 1995) (upholding a life sentence for a first-time felony conviction for possession with intent to distribute 50 grams or more of cocaine base).

[65] *Cortez-Diaz*, 565 F. App'x at 745, 751.

C.    *Violation of Codefendants' Sixth Amendment Rights*

Lopez-Garcia claims the government violated the Sixth Amendment rights of his codefendant, Jesus Octavio Valdez Aguirre.[66]  Relying primarily on the Supreme Court's opinion in *Massiah v. United States*, Petitioner alleges this violation occurred because law enforcement stated that Aguirre began cooperating from the time he was arrested until he obtained counsel, and that any statements he made in the interim, including evidence against the Petitioner, were tainted as the fruits of illegal law enforcement conduct.[67]  He raises the same arguments with respect to codefendants Mario Saucedo Avalos and Jessie Silva.[68]   Lopez-Garcia does not claim that his Sixth Amendment rights were violated in this argument.

In *Massiah* and its progeny, the Supreme Court established that once the right to counsel has attached, "the defendant's own incriminating statements [elicited surreptitiously by the police without counsel present may] not constitutionally be used by the prosecution as evidence against him at his trial."[69]   In this line of cases, investigators used jailhouse informants or hidden devices on cooperating indicted codefendants to elicit evidence directly from defendants against whom the evidence was later used.[70]   None of these cases involved the testimony of cooperating codefendants about pre-indictment evidence, but, rather, prohibit "deliberate efforts by the government to create situations in which indicted defendants are likely to make incriminating statements to seemingly independent others in the absence of counsel."[71]

---

[66] Doc. 396 at 5.

[67] 377 U.S. 201 (1964).

[68] Doc. 396 at 5–6.

[69] *United States v. Geittmann*, 7833 F.2d 1419, 1425–26 (1984) (quoting *Massiah*, 377 U.S. at 207).

[70] *See Massiah*, 377 U.S. at 202–03 (prosecution team installed a transmitter in a codefendants car to listen in on post-indictment conversations between codefendants); *see also United States v. Henry*, 447 U.S. 264, 270 (1980) (paid jailhouse informant elicited information from defendant).

[71] *Geittmann*, 733 F.2d at 1427.

Petitioner's reliance on *Massiah* is misplaced.  In that case, the defendant challenged the use of incriminating statements he made to a codefendant after they were indicted and the codefendant had become a cooperating witness who enabled the government to listen in on conversations with the defendant.[72]  Massiah did not invoke his codefendant's Sixth Amendment rights, but argued that his own rights were violated when the government endeavored to elicit incriminating statements from him in the absence of his attorney following indictment.  That case bears no factual similarity to the instant case, wherein codefendants provided information to law enforcement after agreeing to cooperate, rather than eliciting statements from the Petitioner, and does not demonstrate any basis for habeas relief.  Petitioner cannot base a claim on alleged violations of his codefendants' Sixth Amendment rights.  The Tenth Circuit has explained "[t]he Sixth Amendment right to counsel is a personal right.  A defendant thus does not have standing to raise the Sixth Amendment claims of a co-defendant."[73]  Petitioner does not claim his own Sixth Amendment rights were violated, and he has failed to raise a Sixth Amendment claim.

D.     *Prosecutorial Misconduct*

Lopez-Garcia next argues that he was denied due process under the Fifth Amendment because the prosecution did not tell him that several codefendants were cooperating witnesses, depriving him of the ability to seek early severance from those parties.  His codefendants cooperated with the prosecution for two years before trial, also prompting a claim of prosecutorial misconduct for failing to notify him of this fact despite an affirmative duty to disclose all evidence material to guilt or punishment.  He argues that the cooperating codefendants entered notices of intent to change their respective pleas in June 2015, but the

---

[72] *Massiah*, 377 U.S. at 206–07.

[73] *United States v. Davis*, 612 F. App'x 526, 528 (10th Cir. 2015) (citing *United States v. Jones*, 44 F.3d 860, 873 (10th Cir. 1995)).

Court did not act on Petitioner's motion for severance for another five months, providing the government an unfair advantage in trial preparation.  Petitioner also asserts that the government's actions constituted misconduct.[74]

Petitioner cites no law supporting his allegation that "the Government intentionally and knowingly used the cooperating witnesses to gain information concerning the Trial Strategy of the defense."[75]  His sole allegation that he filed multiple joint motions with other defendants and the government effectively manipulated the cooperating codefendants into not filing notices of intent to change plea until late in the pretrial process is a non sequitur.  Petitioner also fails to identify any legal basis for the suggestion that the government's disclosure of cooperating witnesses months before trial, in accordance with the Court's orders and relevant law, constituted misconduct or in any way prejudiced his defense.  This claim is denied.

E.     *Sufficiency of the Second Superseding Indictment*

Lopez-Garcia's second Fifth Amendment due process claim is based on the charging documents, which he contends did not inform him of the elements of the offenses with which he was charged.  He also argues that the government presented different facts at trial than it did at the grand jury, also unconstitutionally hampering his ability to prepare for trial.  He alleges that this claim amounts to a violation of the Sixth Amendment mandate that a criminal defendant be informed of the nature of the charges presented, and that the government was required to file a bill of particulars.

Lopez-Garcia challenges the adequacy of the indictment by stating that it failed to support each of the nine charges against him and that "a properly instructed GRAND JURY that was looking solely at the facts alleged in the indictment and the evidence provided to the defense

---

[74] Doc. 396 at 6–7.

[75] *Id.* at 7.

through discovery would have declined to charge Petitioner."[76]  He describes the indictment as

"for the most part a verbatim recitation of the broad and varied statutory elements of the offenses

that are charged against Petitioner in the various counts."[77]  The indictment, according to

Petitioner, lacks sufficient facts to support the charges and failed to enable him to prepare to

defend himself against the charges at trial.

"An indictment is sufficient if it sets forth the elements of the offense charged, puts the

defendant on fair notice of the charges against which he must defend, and enables the defendant

to assert a double jeopardy defense."[78]  "The test of the validity of the indictment is not whether

the indictment could have been framed in a more satisfactory manner, but whether it conforms to

minimal constitutional standards. Further, when evaluating an indictment's sufficiency, [a court]

employ[s] practical rather than technical considerations."[79]  "'The purpose of a bill of particulars

is to inform the defendant of the charges against him with sufficient precision to allow him to

prepare his defense.'"[80]  "A bill of particulars is not necessary if 'the indictment sets forth the

elements of the offense charged and sufficiently apprised the defendant of the charges'" against

him.[81]

The Second Superseding Indictment, as Petitioner acknowledges, provided a near

"verbatim recitation of the . . . statutory elements" for each of the charges against Petitioner and

---

[76] *Id.* at 9.

[77] *Id.* at 10.

[78] *United States v. Washington*, 653 F.3d 1251, 1259 (10th Cir. 2011) (quoting *United States v. Gama–Bastidas*, 222 F.3d 779, 785 (10th Cir. 2000).

[79] *Id.* (internal citation and quotation marks omitted).

[80] *United States v. Tyler*, 42 F. App'x. 186, 190 (10th Cir. 2002) (quoting *United States v. Ivy*, 83 F.3d 1266, 1281 (10th Cir. 1996)).

[81] *United States v. Levine*, 983 F.2d 165, 167 (10th Cir. 1992) (quoting *United States v. Dunn*, 841 F.2d 1026, 1030 (10th Cir. 1988)).

cited to each specific statute underlying the charges.[82]  Further, the indictment included the dates

and nature of each offense, the quantity of drugs charged, and the identities of Petitioner's

codefendants, putting Petitioner on ample notice of the charges against him.  No further factual

allegations were necessary for defendant to prepare a defense and invoke double jeopardy, if

able.[83]  Accordingly, the indictment was sufficient, obviating the need for a bill of particulars.

F.      *Selective and Vindictive Prosecution*

Lopez-Garcia claims that he was singled out for prosecution for improper reasons.  He

argues that the government engaged in vindictive prosecution after he asserted his right to a jury

trial, and that he was prosecuted and convicted despite there being no evidence that he was ever

part of a drug conspiracy.[84]

Typically, to succeed on a claim of vindictive prosecution, the defendant bears the burden

and "must establish either (1) actual vindictiveness, or (2) a realistic likelihood of vindictiveness

which will give rise to a presumption of vindictiveness."[85]  The Tenth Circuit defined the inquiry

as "whether the prosecution engaged in conduct that would not have occurred but for the

prosecution's desire to punish the defendant for exercising a specific legal right."[86]  If the

defendant proves either element, the burden shifts to the government to justify its prosecutorial

decision based on "legitimate, articulable, objective reasons.  If the defendant fails to prove

either element, the trial court need not address the government's justification for its prosecutorial

---

[82] Doc. 399.

[83] *Washington*, 653 F.3d at 1259.  *See also United States v. Resendiz-Ponce*, 549 U.S. 102, 107–08 (2007) (holding that indictment was sufficient when it identified the date and location of the alleged criminal conduct).

[84] Doc. 396 at 11–12.

[85] *United States v. Raymer*, 941 F.2d 1031, 1040 (10th Cir. 1991) (citing *United States v. Goodwin*, 457 U.S. 368, 374, 376, 380–81, 384 & n.19 (1982)).

[86] *United States v. Sarracino*, 340 F.3d 1148, 1177, 1178 (10th Cir. 2003).

decision.  Merely by the appearance of vindictive motives, vindictiveness may not be presumed."[87]

Petitioner makes no effort to allege facts supporting his claims of selective and vindictive prosecution, only contending that "review of the Trial transcript, indictments, Sentencing Transcript, and any and all relevant documents the evidence will show that Petitioner never played a role in a drug conspiracy and the Government never produced any evidence that proved Petitioner was involved in a drug conspiracy."[88]  This neither demonstrates nor suggests actual vindictiveness or the realistic likelihood of vindictiveness, failing the first step in the inquiry. With the absence of any alleged supporting facts and Petitioner's failure to establish either element of the first part of the test for vindictive prosecution, the Court will dismiss this claim.

G.     *Ineffective Assistance of Counsel*

Lopez-Garcia raises ineffective assistance claims against both his trial counsel and his appellate attorney.  He identifies six alleged infirmities in trial counsel's representation, stating that counsel failed: (1) to adequately advise Petitioner of right to testify in his own defense, (2) to adequately interview and prepare trial witnesses, (3) to call several witnesses at trial, (4) to impeach the prosecution witnesses, (5) inform the court of the prosecution's violation of Petitioner's due process rights and failure to correct false testimony, and (6) object to jury instructions and request certain omitted instructions.  He also contends that appellate counsel improperly advised him that his ineffective assistance arguments regarding trial counsel should not be raised on direct appeal.  Further, he asserts that counsel also failed to inform the court that he withdrew as counsel due to the suspension of his license for a sixty-day period.[89]

---

[87] *Id.* (internal quotations and citations omitted).

[88] Doc. 396 at 11–12.

[89] *Id.* at 12–14.

To prevail on a claim that trial counsel was ineffective, a defendant must establish (1) that "counsel's representation fell below an objective standard of reasonableness," and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[90]  To prevail on a claim of ineffective assistance of appellate counsel, a defendant must establish that counsel was objectively unreasonable in failing to raise or properly present a claim on direct appeal, and that there is a reasonable probability that, but for this unreasonable failure, the claim would have resulted in relief on direct appeal.[91]

Notably, Petitioner does not provide supporting details or facts for his ineffective assistance claims, with the exception of the claim regarding appellate counsel's advice about collateral claims.  Even a *pro se* petitioner must allege some factual basis to support a claim, else the court is left to guess, for instance, how trial counsel's advice was inadequate or which witnesses he failed to call or impeach.  With the sole exception of the appellate argument issue, Petitioner has failed to allege facts to support his claims of ineffective assistance of counsel that are more than mere speculation or conjecture.[92]

Petitioner has provided the Court with sufficient information to review his claim that appellate counsel was ineffective for advising him that direct appeal was not the appropriate vehicle for raising ineffective assistance claims against trial counsel.  Petitioner's claim is meritless, however, as appellate counsel correctly advised him as to the law.  The Tenth Circuit has unequivocally held that "[i]neffective assistance of counsel claims should be brought in

---

[90] *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).

[91] *See Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003).

[92] *See Hatch v. Okla.*, 58 F.3d 1447, 1469 (10th Cir. 1995), *overruled in part on other grounds by Daniels v. United State*s, 254 F.3d 1180, 1188 n.1 (10th Cir. 2001) ("In order to warrant relief, or, as an initial matter, even an evidentiary hearing, a habeas corpus petitioner must allege sufficient facts to establish a constitutional claim.") (*quoting Wiggins v. Lockhart*, 825 F.2d 1237, 1238 (8th Cir. 1987)); *see also United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (rejecting ineffective assistance of counsel claims that were merely conclusory in nature and without supporting factual averments).

collateral proceedings, not on direct appeal.  Such claims brought on direct appeal are presumptively dismissible, and virtually all will be dismissed."[93]  It is immaterial if the record on appeal would have provided a sufficient basis to review the claim, as the district court is supposed to be the first court to consider such claims and it can only do so through collateral review.[94]  Appellate counsel *could* have raised the ineffective assistance claims on appeal, but petitioner does not provide and this Court cannot identify any reason to believe the claims would not have been dismissed or, if considered, would have resulted in relief on direct appeal.[95]

Given the manifest lack of merit to defendant's motion for relief, no evidentiary hearing on Petitioner's Motion to Vacate is required.[96]  Petitioner's claims do not meet the standard for an evidentiary hearing, and the Court will dismiss these claims.

H.      *Motion for Appointment of Counsel*

The Court further finds that appointment of counsel is unjustified.  A defendant generally has no right to counsel in the presentation of a § 2255 motion, because the right to appointed counsel extends to the defendant's first appeal as of right, and no further.[97]  In deciding whether to appoint counsel as a matter of discretion, a court will consider factors such as the merit of the petitioner's claims; the nature of any factual issues; the petitioner's ability to present his claims;

---

[93] *United States v. Galloway*, 56 F.3d 1239, 1240 (10th Cir.1995) (en banc).

[94] *Id.*

[95] *See United States v. Taylor*, 492 F. App'x 941, 944 (10th Cir. 2012) ("Inmates are not required to raise ineffective-assistance claims on direct appeal, but may raise them for the first time in a collateral proceeding.  But a defendant retains the option to raise an ineffective-assistance claim in the direct appeal.") (citations omitted); *Fairchild v. Trammell*, 784 F.3d 702, 715 (10th Cir. 2015) ("To prevail on a claim of ineffective assistance of appellate counsel, a defendant must establish that counsel was objectively unreasonable in failing to raise or properly present a claim on direct appeal, and that there is a reasonable probability that, but for this unreasonable failure, the claim would have resulted in relief on direct appeal.") (citation omitted).

[96] *Galloway*, 56 F.3d at 1240 n. 1 (10th Cir. 1995).

[97] *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987).

and the complexity of the claims.[98] Appointment of counsel is not required where the issues raised are not unusually complex either legally or factually, and when the merits do not appear colorable.[99] Here, Lopez-Garcia has failed to advance any viable arguments at all in support of an attack on his sentence and conviction, particularly after accounting for the procedural default of most of his claims. His claims are not complex, nor do they fail merely for failure of counseled argument but were adequately articulated, albeit unsuccessfully. The court finds no basis for finding that appointment of counsel is justified under 18 U.S.C. § 3006A.

I.      *Motion for Return of Property*

Petitioner filed a motion under Rule 41(g), seeking return of possible recorded privileged conversations he may have had with his attorney while housed at CCA in 2015 and 2016.[100] He contends that the government would have had a strong incentive to secure his privileged communications given the nature of the charges he faced. He does not identify any communications with counsel that may have been intercepted, only speculation that the government had a motive to do so.

Under Rule 41(g):

> A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

---

[98] *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991).

[99] *See United States v. Dillon*, 339 F. Supp. 2d 1155, 1160 (D. Kan. 2004) (denying motion for appointment of counsel for a § 2255 habeas petitioner after concluding that the claims were not "particularly complex, either legally or factually.").

[100] Doc. 399.

The district court retains jurisdiction over Rule 41(g) motions after the underlying criminal proceedings have terminated.[101]   "A district court should exercise its equitable power to grant relief only if the Rule 41(g) movant shows irreparable harm and an inadequate remedy at law."[102]

Petitioner has not only failed to show irreparable harm but has failed to show any harm at all.  Petitioner does not identify any privileged communications that the government might have accessed, but rather only hypothesizes that the government would have wanted to take advantage of access to privileged communications if they existed.  Such speculation cannot justify relief.

Furthermore, any recordings in the CCA cases are in the possession of the FPD, not the U.S. Attorney's Office.[103]   The USAO disgorged the recordings in its possession under court orders in late 2016.[104]   As such, even if Petitioner had identified any privileged communications that might have been accessed or received by the USAO, Respondent could not surrender any such communications.  No relief is possible for Petitioner, and his Rule 41(g) motion is dismissed as moot.[105]

J.      *Motion for Abeyance*

Finally, Petitioner asks the Court to withhold ruling on his § 2255 motion until it first resolves his Rule 41(g) motion.[106]   Further, he also appears to seek leave to amend his § 2255

---

[101] *United States v. Clark*, 84 F.3d 378, 381 (10th Cir. 1996) (interpreting former Rule 41(e)); *see United States v. Copeman*, 458 F.3d 1070, 1071 n.1 (10th Cir. 2006) ("What was formerly Rule 41(e) is now Rule 41(g), with only stylistic changes.").

[102] *United States v. Shigemura*, 664 F.3d 310, 312 (10th Cir. 2011) (quotations omitted).

[103] *See, e.g.*, *United States v. Rowlette*, No. 13-20125, Doc. 578 at 1617 ("On May 17, 2016, CCA provided six DVR hard drives to the government containing surveillance footage from inside and outside of the facility, including in rooms used for inmate-attorney meetings.  The defense also discovered that the government had routinely obtained CCA recorded attorney-client phone calls, and that it did so without notice to the attorneys, clients, or courts.  Once notified of the recordings, on August 16, 2016, this Court ordered the video and audio recordings in the government's custody to be impounded.").

[104] *Black* Order at 875–76.

[105] *See, e.g., United States v. Garcia*, No. 98-40113 at 1 (D. Kan. Jan. 27, 2000) (dismissing Rule 41(g) motion as moot when the government was not in possession of property which movant sought).

[106] Doc. 418.

motion to include claims of prosecutorial misconduct arising from the issues in the *Black* case.[107] As in Petitioner's Rule 41(g) motion, he does not identify any communications with counsel that might have been recorded.

It is well-settled that in ruling on a motion for leave to amend under Fed. R. Civ. P. 15, courts are instructed to "freely give leave when justice so requires," and to deny leave to amend only when an apparent reason, "such as . . . futility of amendment," exists.[108]  Thus, "a court properly may deny a motion for leave to amend as futile when the proposed amended complaint would be subject to dismissal for any reason."[109]

Petitioner's proposed amendment to his § 2255 motion would be futile.  He does not identify any factual basis for a claim of prosecutorial misconduct or an intrusion on privileged attorney-client communications.  Instead, Petitioner only speculates that the government would have had a strong incentive to intrude on those communications based on the charges against him, and such speculation cannot support a § 2255 claim.[110]  The Court will not grant leave to amend Petitioner's § 2255 motion with a futile claim of governmental misconduct or a Sixth Amendment violation.  To the extent Petitioner's Motion requests a stay of proceedings until the Court can rule on his Rule 41(g) motion, the Court denies it as moot.

## IV.    Certificate of Appealability

Rule 11 of the Rules Governing Section 2255 Proceedings states that the Court must issue or deny a certificate of appealability ["COA"] when it enters a final order adverse to the

---

[107] *Id.*  at 5 ("If this court dismiss [sic] Petitioner's 2255 motion without resolution of Petitioner's Rule 41(g) motion, in which, he can add to this current 2255 motion pending, he will have a due process & miscarriage of justice violation.").

[108] Fed. R. Civ. P. 15(a)(2); *Cohen v. Longshore*, 621 F.3d 1311, 1313 (10th Cir. 2010).

[109] *Bradshaw v. Lappin*, 484 F. App'x 217, 225 (10th Cir. 2012) (citation omitted).

[110] *United States v. Maxton*, 796 F. App'x 542, 545 (10th Cir. 2019) ("Mere speculation, unsupported by facts, does not entitle [Petitioner] to § 2255 relief.").

applicant.  "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."[111]  If the district court denies a habeas petition on procedural grounds without reaching the merits of petitioner's underlying constitutional claim, "the prisoner must show both (1) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling' *and* (2) 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right.'"[112]  For the reasons explained above, Petitioner has not met either showing and the Court therefore denies a COA.

**IT IS THEREFORE ORDERED BY THE COURT** that Petitioner's Motion to Correct Illegal Sentence Pursuant to 28 U.S.C. § 2255 (Doc. 396) is **denied** without an evidentiary hearing.  **IT IS FURTHER ORDERED** that Petitioner's Motion Under Rule 41(g) for Return of Privileged Information (Doc. 399), Motion for Appointment of Counsel (Doc. 408), and Motion for Abeyance (Doc. 418) are **denied**.  The Court **denies** a Certificate of Appealability with respect to Petitioner's § 2255 motion.

**IT IS SO ORDERED.**

Dated: June 1, 2021

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE

---

[111] 28 U.S.C. § 2253(c)(2).

[112] *United States v. Park*, 727 F. App'x 526, 528 (10th Cir. 2018) (emphasis in original) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).